**MELVIN RAYFORD**            *            NO. 2022-CA-0640

**VERSUS**            *

**LAURA RAYFORD**            *            **COURT OF APPEAL**

            *            **FOURTH CIRCUIT**

            *            **STATE OF LOUISIANA**

            * * * * * * *

<u>**CONSOLIDATED WITH:**</u>            <u>**CONSOLIDATED WITH:**</u>

**LAURA RAYFORD**            **NO. 2022-CA-0641**

**VERSUS**

**MELVIN RAYFORD**
<u>**CONSOLIDATED WITH:**</u>            <u>**CONSOLIDATED WITH:**</u>

**LAURA RAYFORD**            **NO. 2022-CA-0642**

**VERSUS**

**MELVIN RAYFORD**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-05720, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rachael D. Johnson, Judge
Karen K. Herman)

Raphael Bickham
THE BICKHAM LAW PRACTICE, L.L.C.
650 Poydras St., Suite 1400
New Orleans, LA 70130
        COUNSEL FOR PLAINTIFF/APPELLANT

Theon Agnes Wilson
LAW OFFICES OF THEON A. WILSON
1100 Poydras St., Suite 1160
New Orleans, LA 70163-2900
        COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**JULY 12, 2023**

KKH
DLD
RDJ

In this domestic proceeding, the plaintiff-appellant, Melvin Rayford, appeals the trial court's judgment partitioning community property rendered May 23, 2022. For the reasons that follow, the community property partition judgment is affirmed.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Melvin Rayford ("Mr. Rayford") and Laura Rayford ("Ms. Rayford") were married on January 26, 2008 and divorced on December 22, 2016. No children were born of the marriage.

Early in their marriage, the Rayfords resided at 1354 Mandolin Street in Orleans Parish, a home Ms. Rayford had acquired before their marriage. They lived in the Mandolin Street residence for more than two years, until April 2010, when they purchased a home located at 5444 Elysian Fields Avenue for $47,000. That property is also in Orleans Parish.

The record reflects that on April 7, 2010, the Rayfords borrowed $107,855 from Chase Bank, and that loan was secured by a mortgage on Ms. Rayford's separate property on Mandolin Street. On April 12, 2010, a check from Crescent City Title, L.L.C. in the amount of $103,363.72 made payable to Ms. Rayford was deposited into a community checking account. Mr. Rayford obtained a cashier's

1

check in the amount of $47,100 from that community account made payable to Baldwin, Haspel, Burke & Mayer, L.L.C., the law firm that handled the closing on the cash sale of the Elysian Fields property. The parties closed on that sale on April 12, 2010.

In 2012, Ms. Rayford instituted divorce proceedings, but the couple reconciled the next year. Then, on December 27, 2013, there was an incident between Mr. and Ms. Rayford that led her to file a motion for a protective order. On January 21, 2014, that motion was heard. Ms. Rayford testified to a history of verbal and physical abuse at the hands of Mr. Rayford, with the most recent incident occurring on December 27, 2013. She related to the trial court that a couple of days after that incident, Mr. Rayford returned with a police escort, gathered some of his personal belongings, and had not been back to the matrimonial home since.

Mr. Rayford followed Ms. Rayford to the witness stand and denied her allegations of abuse. He agreed that there was marital discord, but attributed it instead to problems with the behavior of his wife's adult children and their friends. At the conclusion of the hearing, the trial court granted an 18-month protective order in favor of Ms. Rayford. On July 14, 2014, the trial court also issued a restraining order prohibiting Mr. Rayford from alienating, encumbering, disposing of, or concealing any of the community assets.

On September 14, 2014, the parties reconvened in open court to address Ms. Rayford's continued residence in the matrimonial home. The parties reached an agreement that was read into the record in their presence. Ms. Rayford agreed to dismiss her rule for a temporary restraining order, and to permit Mr. Rayford to collect specified items of furniture from the Elysian Fields home. The trial court

2

also memorialized an agreement by the parties regarding Ms. Rayford's motion for use of the matrimonial home. In the presence of the parties the trial judge had the following colloquy with counsel:

> THE COURT:
> Now, there is before the Court today a rule filed on behalf of Laura Rayford for use of the home. And the parties have told me that they don't need to deal with that right now. Ms. Rayford is in the home. There hasn't been a court order, but it's not something that we need to deal with today; is that correct?
> [COUNSEL FOR MS. RAYFORD]:
> Correct, Judge.
> [COUNSEL FOR MR. RAYFORD]:
> Occupancy of the home has been granted by a restraining order, a restraining order that has been previously issued.

Ms. Rayford filed a petition for divorce on June 13, 2014. On October 25, 2016, the trial on Ms. Rayford's petition for divorce was held. Although served with the petition for divorce and notified of the trial date, Mr. Rayford did not appear on that date. The judgment granting Ms. Rayford the divorce was signed on December 22, 2016.

On May 29, 2019, Mr. Rayford filed a "Petition for Judicial Partition of Community Property and Matters Incident to Divorce." In his petition, Mr. Rayford sought exclusive use and occupancy of the Elysian Fields property, or in the alternative, rental reimbursement from Ms. Rayford. Additionally, Mr. Rayford requested a preliminary injunction prohibiting Ms. Rayford from alienating, encumbering, disposing of, or concealing any of the community property, which was granted on June 7, 2019. The parties filed sworn descriptive lists of the alleged community assets and liabilities in August 2019.

Trial in this matter was held piecemeal on three dates: November 5, 2021, January 7, 2022, and March 11, 2022. Mr. and Ms. Rayford testified

as did Jim Thorns, a court-appointed real estate expert who appraised the Elysian Fields property. Additionally, nineteen documents were introduced into the record and testified to by the parties. After the parties submitted post-trial memoranda, the trial court rendered judgment on May 23, 2022. In that judgment the trial court concluded that Ms. Rayford was owed $62,075.34 in reimbursement for payment of community debts, along with the sum of $1,455.00 she paid in traffic ticket fines attributed to a car registered in Ms. Rayford's name but used exclusively by Mr. Rayford. Finally, the trial court allocated the Elysian Fields home to Ms. Rayford and required her to pay to Mr. Rayford an equalizing payment of $19,323.49.

On July 7, 2022, Mr. Rayford filed a motion for a devolutive appeal. That motion was granted on July 14, 2022. This timely appeal followed.

## STANDARD OF REVIEW

In a community property partition, the trial court is vested with great discretion. A reviewing court may not set aside the trial court's findings in the absence of manifest error or unless they are clearly wrong. *Gallaty v. Gallaty*, 2011-1640, pp. 3-4 (La. App. 4 Cir. 10/13/12), 101 So.3d 501, 504. The trial court is afforded a great deal of latitude in arriving at an equitable distribution of the assets between spouses. *Legaux-Barrow v. Barrow*, 2008-530, p.5 (La. App. 5 Cir. 1/27/09), 8 So.3d 87, 90.

## DISCUSSION

### Rental Reimbursement Claim

In his first assignment of error, Mr. Rayford maintains that the trial court erred in denying his rental reimbursement claim. He first asserted that he was due this reimbursement in his petition for partition filed on May 29,

2019. In his sworn descriptive list filed on August 26, 2019, he claimed rental reimbursement at the rate of $1,500 per month for the past 60 months, for a total of $90,000.00. Approximately three years later, in his post-trial memorandum, he increased the monthly rate to $2,147.00 and sought reimbursement for 96 months, resulting in a claim for $103,056.00.

Ms. Rayford initially responded to Mr. Rayford's claim for rental reimbursement when the parties met in open court on November 5, 2021. In that hearing, Ms. Rayford argued that because the procedure laid out in La. R.S. 9:374 had not been followed, no reimbursement was due. The trial court deferred ruling on whether Mr. Rayford had properly asserted a claim pursuant to that statute, preferring to take testimony on the issue and take it under advisement.

The judgment of May 23, 2022 is silent as to Mr. Rayford's claim for rental reimbursement. Accordingly, it is unclear whether the trial court sustained Mrs. Rayford's procedural objection or concluded that, in view of the testimony by the Rayfords, Mr. Rayford had not carried his burden of proof on the matter.

La. R.S. 9:374 provides, in pertinent part, as follows:

*    *    *    *

B. When the family residence is community property or is owned by the spouses in indivision, or the spouses own community immovables or a community manufactured home as defined in R.S. 9:1149.2 and occupied as a residence, regardless of whether it has been immobilized, after or in conjunction with the filing of a petition for divorce, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community immovables or the community manufactured home pending partition of the property or further order of the court, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses,

5

including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community immovables or the community manufactured home to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community immovables or the community manufactured home in awarding spousal support.

C. A spouse who, in accordance with the provisions of Subsection A or B of this Section, uses and occupies or is awarded by the court the use and occupancy of the family residence, a community immovable occupied as a residence, or a community manufactured home as defined in R.S. 9:1149.2 and occupied as a residence, regardless of whether it has been immobilized, shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided.

D. In a proceeding for divorce or thereafter, a spouse may move for an award of rent at any time. After a contradictory hearing, the court may award rent to be paid by a spouse exercising exclusive use and occupancy of a residence whether by judgment or in fact. The award shall be retroactive to the date of filing of the motion, but rent shall be awarded only for the period of exclusive occupancy. The adjudication of the issue of rent and the amount thereof may be deferred to a later date by the court or by agreement of the parties. It shall not be a prerequisite to the award of rent that the spouse against whom the award is made shall have requested use and occupancy of the residence.

At the trial of the partition and in her brief, Mrs. Rayford argued that, pursuant to this statute, Mr. Rayford is not entitled to an award of rental reimbursement for the nearly five year period between the September 14, 2014 hearing and the filing of his petition to partition. We agree. First, Mr. Rayford was given an opportunity to contest Ms. Rayford's continued occupancy on September 14, 2014, and as indicated in the excerpt above, declined to do so. Nor did Mr. Rayford assert a claim for rent pursuant to La. R.S. 9:374 at that point or any other time in the intervening years. Moreover, the very language of Subsection D of the statute provides that the non-occupant spouse is only entitled to rental reimbursement retroactive to the date of the filing of the motion. Accordingly, Mr. Rayford's claim that the

trial court erred in not granting him rental reimbursement for the period prior to his petition for partition is without merit.

Over the three days of testimony, the trial court heard from both Mr. and Ms. Rayford and viewed the various documents submitted by both parties. There was testimony from the parties regarding their respective finances and payments made to various creditors concerning the Elysian Fields property. Presumably, as required by La. R.S. 9:374 (B), the trial court weighed the relative economic status of the parties and the best interests of the family in considering Mr. Rayford's request for the use and occupancy of the former matrimonial domicile and for rental reimbursement from Ms. Rayford. After reviewing the testimony and documentary evidence in the record, we cannot say that the trial court abused its discretion in denying his claim for rental reimbursement. Indeed, nowhere in his brief does Mr. Rayford point to evidence in the record that supports his conclusory contention that the trial court's resolution of the rental reimbursement claim was error. This claim is meritless.

**Reimbursement for Repairs to Mandolin Street**

In his second assignment of error, Mr. Rayford maintains that the trial court erred in denying his request for reimbursement arising out of the use of community property for the benefit of Ms. Rayford's separate property. He claimed in his testimony that he and Ms. Rayford took out a loan of $103, 363.72 for the purpose of renovating her Mandolin Street separate property, and that the loan was secured by a mortgage on the Mandolin Street property. He argues in his brief that the trial court should have credited his testimony that cash was withdrawn from the joint bank account on several

7

occasions and then spent to repair or improve Ms. Rayford's Mandolin Street property.

During his testimony, Mr. Rayford claimed that community funds were used to repair the roof on Mandolin Street. Per Mr. Rayford, those repairs were performed by a man named "Regg" or "Reginald" who had since passed away. Mr. Rayford recalled that they paid him "about $13,000." No records were presented to corroborate this testimony. He next asserted floor repairs costing "like $3,500" were done on Mandolin Street, but could not recall by whom those repairs were done. No documentary evidence accompanied that allegation either. Mr. Rayford further claimed the house was painted for "about $3,700," but no testimony was elicited as to who did the work, nor was any record identified that supported this claim. Lastly, Mr. Rayford testified that Michael Voisen performed shoring work on Mandolin Street, again for "about $3,700."

Mr. Rayford testified that most of the repairs were paid for in cash, but no receipts were introduced to support this claim. The only corroboration offered was when Mr. Rayford pointed to various transactions on the joint account bank statement and said the money withdrawn had been spent on Mandolin Street.

On cross-examination, Mr. Rayford's credibility was challenged. He conceded that he had emptied his retirement account some years back, notwithstanding the existence of the injunction of July 14, 2014, prohibiting him from disposing of community assets. He also admitted to having served 16 years in prison for burglary and that he was released the year before he married Ms. Rayford.

Mr. Rayford disputed Ms. Rayford's position that the loan secured by the Mandolin Street property was taken out for the purpose of funding the purchase and renovation of the Elysian Fields property. He maintained that position even when confronted with records that flatly contradicted that testimony. Counsel for Ms. Rayford introduced documents establishing Mr. Rayford had withdrawn the sum of $47,100 from the account in which the loan proceeds had been deposited on April 21, 2010, and that the withdrawal was in the form of a cashier's check. Counsel then presented him with documents that showed a cashier's check in the amount of $47,100 was tendered to Baldwin, Haspel, Burke and Mayer, L.L.C., the law firm handling the closing on the Elysian Fields property, on April 21, 2010. Despite this compelling evidence, Mr. Rayford stood firm in his position.

Concerning community assets spent on her Mandolin Street property, Ms. Rayford testified that the Mandolin Street property was not in need of repairs and no money from the loan was used to that end. She explained that the Mandolin Street home had been badly damaged by Hurricane Katrina and that she had completely renovated it in 2007. That no money was spent on the Mandolin Street property, at least for 2010, was corroborated by the joint federal tax return she identified in her testimony. She stated that $47,100 of the loan proceeds was used to purchase the Elysian Fields home. She further undermined Mr. Rayford's testimony when she identified documents showing that the shoring work described by Mr. Rayford had actually been performed in 2007, prior to the marriage. When asked about the roofing repairs, flooring work, paint job and shoring work testified to by

9

Mr. Rayford, Ms. Rayford denied that any of that work had been done on the Mandolin Street property.

In a community property partition proceeding, the burden of proof is on the party claiming reimbursement. *McLaughlin v. McLaughlin*, 2017-645, p. 5 (La. App. 5 Cir. 5/16/18), 247 So.3d 1105, 111. It is clear from the judgment that the trial court concluded that Mr. Rayford did not bear his burden of proof on this issue. The trial court obviously accepted Ms. Rayford's testimony and documentary evidence in rejecting Mr. Rayford's claim for reimbursement. Given the vague and unsupported testimony offered by Mr. Rayford, we do not disagree with the trial court's resolution of this credibility contest. Finding no abuse of discretion in this finding by the trial court, this assignment of error is unavailing.

**Furniture and Retirement Account**

Next, Mr. Rayford argues that the trial court erred in not including community movables such as furniture and retirement accounts in the computation of the community valuation. In support of this claim, he relies on his testimony regarding the furniture contained in the matrimonial domicile and listed in the sworn descriptive lists filed by the parties.

It should be noted that Mr. Rayford's sworn descriptive list does not attribute any value to the community movables, presumably because he intended to do so at trial. Unfortunately, a review of the testimony and documents introduced at the trial does not bring a great deal of clarity to this issue. Just as he was unable to provide reliable evidence on the cost of the alleged repairs to the Mandolin Street property, Mr. Rayford's testimony concerning items purchased during the community's existence to furnish the

Elysian Fields home was riddled with uncertainties and devoid of supporting documentation. Without saying where or when anything was purchased, Mr. Rayford vaguely recalled bedroom and living room sets that cost "like $3,500" or "about $900."

Again, Ms. Rayford categorically contradicted her former husband when she was called upon to testify about having purchased furniture with Mr. Rayford during the marriage. With the exception of a piano Mr. Rayford bought for $400, Ms. Rayford maintained that almost all of the furnishings had come from her Mandolin Street home, or had been purchased by her daughters. As to her retirement account, Ms. Rayford agreed that the balance was $16,100 in 2019. The judgment rendered on May 23, 2022 does not address the community movables.

La. R.S. 9:2801 sets out the procedure for the partition of community property when the spouses cannot agree on the division. Subsection A provides in pertinent part as follows:

> When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
>
>           *      *      *      *
>
>  (4) The court shall then partition the community in accordance with the following rules:
> (a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.

Turning first to the matter of retirement accounts, there is no evidence in the record that establishes the balance in Ms. Rayford's 401K account was

11

a community asset. Ms. Rayford was asked on cross-examination what the balance was in her retirement account as per a statement in 2019, and she said $16,100. There was no further testimony elicited from her as to whether the money in that account was earned during the existence of the community. When presenting his case, Mr. Rayford was not even asked about Ms. Rayford's retirement account during his testimony. There being no evidentiary basis for concluding that this sum was a community asset, we cannot say that the trial court abused its discretion in excluding it from the valuation of community assets.

As discussed above, the issue of furnishings purchased by the couple during the existence of the marriage was a disputed one. Mr. Rayford maintained that they bought bedroom, dining room and living room sets for the matrimonial domicile, while Ms. Rayford said they mostly used the items from her Mandolin Street home to furnish the Elysian Fields property. While she did agree that some pieces of furniture were acquired during the marriage, she said they were of minimal value even years ago. As the judgment is silent to this factual dispute, we can only conclude that the trial court accepted the testimony of Ms. Rayford as more credible. Again, we cannot say that the trial court abused its discretion in making this credibility call.

**Traffic Fines**

Mr. Rayford takes issue with the trial court's order that he reimburse Ms. Rayford the sum of $1,455.00 that she paid in delinquent traffic fines assessed by the City of New Orleans Photo Safety Program. The evidence showed that those fines were incurred by the driver of a 2008 Chevrolet

12

pickup truck between September 2014 and May 2015. Ms. Rayford testified that she paid those tickets when they were mailed to her at the Elysian Fields address and sanctions were threatened. Under cross-examination, Mr. Rayford conceded that he was the driver of that vehicle during that time period, but asserted that he paid the fines. When asked if he could produce documents corroborating that assertion he admitted he had none.

In *Durden v. Durden,* 2014-1154, p. 14 (La. App. 4 Cir. 4/29/15) 165 So.3d 1131, 1142, this Court explained that the task of a trial court pursuant to La. R.S. 9:2801 is "settling of *all* matters pertaining to the community, settling *all* claims by and against each spouse, and providing for the methods of protecting those claims." (Emphasis supplied.) In the instant matter the trial court properly considered this reimbursement claim by Ms. Rayford. In concluding that the more credible evidence on this question was produced by Ms. Rayford, again, we cannot say the trial court abused its discretion.

**Payment of Community Debts by Ms. Rayford**

In his fifth assignment of error, Mr. Rayford finds fault with the trial court's calculations of the total community liabilities and the amount of reimbursement due to Ms. Rayford. He argues that Ms. Rayford did not carry her burden of proving that she paid community debts, specifically the mortgage payments, from her separate property after the termination of the community. Mr. Rayford does not take issue with the trial court's arithmetic, but rather he contends that Ms. Rayford's testimony that she made those payments and her reference during that testimony to her Chase Bank and

Midland Mortgage records showing monthly payments from 2014 to 2022 was insufficient to provide a basis for the trial court's calculation.[1]

In its judgment, the trial court concluded that the community liabilities totaled $124,150.69 and the amount due to Ms. Rayford to be $62,075.34. The trial court arrived at these sums, at least in part, by taking into consideration Ms. Rayford's payments on the loan she and Mr. Rayford had made with Chase Bank, which was later taken over by Midland Mortgage. The records established that after the couple separated and Mr. Rayford moved out of the Elysian Fields residence in 2014, payments were made and Ms. Rayford testified she made those payments. Furthermore, under cross-examination, Mr. Rayford admitted that he had not made these payments. Accordingly, Mr. Rayford's argument that the trial court was without a factual basis for concluding that Ms. Rayford made the payments, and was therefore due reimbursement, is without merit.

**Resolution of Elysian Fields Avenue Claims**

In his final assignment of error, Mr. Rayford asserts the trial court erred on two fronts: (1) in not awarding Mr. Rayford $125,000 for his interest in the Elysian Fields property, and (2) in allocating that property to Ms. Rayford instead of him. Neither of these arguments have merit.

Jimmy Thorns, an expert in real estate valuation accepted by both parties, testified that he performed an appraisal on the property at 5444 Elysian Fields Avenue and prepared a report. The report was made a part of the record. In his report he opined that the fair market value for that property

---

[1] It should be noted that when counsel presented these records to Ms. Rayford, counsel for Mr. Rayford did not object to the hearsay nature of the records or a lack of authentication for the records.

was $250,000 as of August 19, 2021. The trial court accepted that opinion for purposes of placing a value on the Elysian Fields home.

Mr. Rayford is obviously correct that one-half of $250,000 is $125,000, and Mr. Rayford would be entitled to that if La. R.S. 9:2801 did not mandate that the trial court factor in reimbursements. La. C.C. art. 2365 provides, in pertinent part "[I]f separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used."

In her testimony, Ms. Rayford established that she dutifully paid the loan payments, insurance premiums, property taxes, and made necessary repairs on the matrimonial domicile in the eight plus years between the end of the community regime and the partition proceeding. She also recounted various other amounts she paid in the interim, and reiterated her request for reimbursement for them from the community assets.

As discussed above, the trial court apparently found Ms. Rayford's testimony on those reimbursement requests credible. The arithmetic process Ms. Rayford explained in her testimony, and supported with documentation, was adopted by the trial court. Again, we find no manifest error in the trial court's conclusions.

As to Mr. Rayford's assertion that the home on Elysian Fields should have been allocated to him instead of Ms. Rayford, we disagree. The record reflects that Mr. Rayford walked away from the property without looking back in 2014. In his testimony, he concedes that he never paid any of the

15

mortgage payments, tax liabilities, insurance premiums or repair costs on this jointly owned property for more than eight years, leaving all of those burdens to Ms. Rayford. We find no merit in Mr. Rayford's argument that going forward Ms. Rayford will be unable to pay the equalizing payment or otherwise meet her obligations and concur with the trial court's conclusion on this issue.

**CONCLUSION**

It is apparent from the judgment rendered by the trial court that it found Ms. Rayford and the documents she used to support her testimony to be more credible than the accounts provided by Mr. Rayford. We defer to the trial court's decision as to the credibility of the parties as witnesses. Accordingly, we affirm the trial court's judgment.

**AFFIRMED**